Kathleen JOHNSON, as personal representative of the Estate of Robert Johnson, deceased, and Kathleen Johnson, an individual, Plaintiffs,

v.

VIRGIN ISLANDS PORT AUTHORITY, a public corporation; High Seas Maritime, Inc., a corporation; and Pat Hotchkiss, an individual, Defendants.

No. CIV.2001–242.

District Court,
Virgin Islands,
D. St. Thomas and St. John.

Dec. 13, 2002.

Boyd L. Sprehn, Frederick G. Watts, St. Thomas, VI, Richard Wygonik, Dearborn, MI, for the plaintiffs.

Carol G. Hurst, Alexandra L. Bartsch, St. Thomas, U.S.V.I., Albert Frevola, Jr., Douglas T. Marx, Conrad & Scherer, Ft. Lauderdale, FL, for defendant Virgin Islands Port Authority.

**MEMORANDUM**

MOORE, District Judge.

Plaintiffs move the Court pursuant to Rule 56 for partial summary judgment and/or declaratory judgment against defendant Virgin Islands Port Authority ["VIPA"] that the 2001 amendments to Title 29 of the Virgin Islands Code, section 556(c), (d), and (e) have no effect or application to this action. Defendant VIPA opposes and cross moves for partial summary judgment.

## I. BACKGROUND

On January 7, 2000, a Royal Netherlands Navy warship, the RNS VanSpeijk, moored at the Crown Bay Pier ["pier"] on St. Thomas. In mooring the RNS VanSpeijk, a line was secured from the vessel's stern to a mooring dolphin ["mooring dolphin"] located approximately 300 feet from the end of the pier. Both the pier and the mooring dolphin are owned and operated by VIPA.

On the morning of January 7, 2000, Kathleen and Robert Johnson ["the Johnsons"] left Flamingo Bay on Water Island heading for the Crown Bay Marina in their boat. The unmarked mooring line passed directly over the head of Kathleen Johnson as she rode in the boat, and struck the T-Top of the Johnson's boat. The impact of the mooring line on the boat caused the center console and helm of the vessel to tear loose, severely injuring Robert Johnson. Plaintiff alleges that her husband endured tremendous pain and suffering over the last forty-six days of his life, including multiple surgeries, partial paralysis including the loss of the use of his legs, continual hospitalization, and finally death from pneumonia which, plaintiff alleges, was caused by his injuries.

Kathleen Johnson was in the immediate presence of Robert Johnson at the time of his fatal injuries, and at his side as he suffered for forty-six days. Kathleen Johnson alleges that she was placed in danger herself by the same actions and omissions which allegedly killed her husband.

On February 6, 2001, thirteen months after the accident, Governor Charles W. Turnbull approved the "Fiscal Year 2001 Omnibus Authorization Act," No. 6391 ["Omnibus Act"] which included a provision limiting the liability of the Port Authority to $25,000 except in cases of gross negligence. The Omnibus Act does not include a specific effective date, or make any specific declaration of a legislative intention that the limitation should be applied retroactively.

Plaintiff has included within her complaint two counts seeking declaratory relief on the application of the Omnibus Act to this action. VIPA has asserted that the enactment of the Omnibus Act limits its liability to $25,000, as an affirmative defense. The plaintiff seeks partial summary judgment in her favor and against the Port Authority on this affirmative defense.

## II. THE OMNIBUS ACT

The Omnibus Act amended, *inter alia*, the Virgin Islands statute regulating judgments and executions against VIPA, adding new sections (c), (d), and (e) to 29 V.I.C. 556 as follows:

§ 556. Exemption of Authority from judicial process and taxes

(a) All property including funds of the Authority shall be exempt from levy and sale by virtue of an execution, and no execution or other judicial process shall issue against the same nor shall any judgment against the Authority be a charge or lien upon its property; provided, however, that this subsection shall not apply to or limit the right of bondholders, or mortgage holders or other lending institutions to pursue any remedies for the enforcement of any pledge or lien given by the Authority on its rates, fees, revenues, or other income or any other funds.

(b) The purpose [sic] for which the Authority is created and shall exercise its powers being public purposes, the property of the Authority, its income and its activities shall be exempt from all taxes and special assessments of the United States Virgin Islands or any political

subdivision thereof. In lieu of taxes, the Authority may agree to make such payments to the United States Virgin Islands or any political subdivision thereof as it finds consistent with the obligations of the Authority and the achievement of the purposes of this chapter.

(c) No judgment shall be rendered against the Authority in excess of $ 25,000 in any suit or action against the Authority with respect to any injury to or loss of property or personal injury or death which:

(1) may be caused by the negligent or wrongful act or omission of an employee of the Authority while acting within the scope of his employment under circumstances where the Authority, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred; or

(2) may occur in connection with the use of the Authority's facilities.

(d) The provisions of subsection (c) of this section shall not apply if the injury, loss of property or death is caused by the gross negligence of an employee of the Authority while acting within the scope of his employment.

(e) The Authority consents to have the liability determined in accordance with the same rule of law as applied to actions in the courts of the Virgin Islands against individuals or corporations.

(Added Dec. 24, 1968, No. 2375, § 1, Sess. L.1968, Pt. II, p. 389; amended Sept. 18, 1969, No. 2551, § 3, Sess. L.1969, p. 282; Feb. 1, 2001, No. 6391, § 2(d), Sess. L.2000, p. 438.)

## III. RETROACTIVITY OF STATUTES

For decision is whether the newly added 29 V.I.C. § 556(c) limits the plaintiff's recovery in this matter. Section 556(c) became effective on February 6, 2001, after the accident had occurred on January 7, 2000. Johnson filed her complaint on December 21, 2001. Johnson contends that the new provision cannot be applied retroactively to limit VIPA's liability for alleged misconduct occurring before the Omnibus Act's enactment. I must reluctantly disagree. The new provision applies by its plain terms to judgments entered on complaints brought after it became effective, namely, the statute provides that "[n]o judgment shall be rendered against the Authority in excess of $25,000 in any suit or action against the Authority with respect to any injury to or loss of property or personal injury or death . . . ."

Enactment of section 556(c) does not implicate the retroactive application of a statute because it does not regulate the activities of VIPA. This case, therefore, does not present a true retroactivity problem. *See, e.g., Zeran v. America Online, Inc.,* 129 F.3d 327, 334 (4th Cir.1997) ("Retroactivity concerns arise when a statute applies to conduct predating its enactment."). Instead, the new provision only limits the amount a litigant can recover against VIPA for personal injury or death caused by the negligent or unlawful act or omission of an employee of VIPA. Section 556(c)'s damages cap became effective well before Johnson filed her complaint. Accordingly, the limitation to VIPA's liability in damages imposed by the Omnibus Act is prospective in its application to this case.[1]

---

1. The plaintiffs argue that 29 V.I.C. § 556(c) operates retroactively because it affects liability for an incident that occurred before its enactment. But this provision, as explained above, affects judgments rendered at the conclusion of judicial proceedings. Section 556(c) would be retroactive only if it capped judgments rendered before the Governor signed the Omnibus Act. In such a case, I would use the *Landgraf* analysis to determine whether the presumption against retroactivity would prevent the application of the cap. *See*

Moreover, application of 29 V.I.C. § 556(c) to this lawsuit does not implicate the fairness concerns which motivate the arguments against retroactivity of statutes. In this case, there is no impermissible retroactive effect. This provision neither imposes new liability on the Johnsons nor takes away any rights they possessed under prior law. *See In re: TMI*, 89 F.3d 1106, 1113 (3d Cir.1996) ("a pending tort claim does not constitute a vested right"); *see also Zeran*, 129 F.3d at 335 ("No person has a vested right in a nonfinal tort judgment, much less an unfiled tort claim."); *Arbour v. Jenkins*, 903 F.2d 416, 420 (6th Cir.1990) (a legal claim affords no enforceable property right until reduced to a final judgment); *Sowell v. American Cyanamid Co.*, 888 F.2d 802, 805 (11th Cir.1989) (same).

## IV. CONCLUSION

I will therefore deny the plaintiffs' motion for partial summary judgment and/or declaratory relief, and will grant VIPA's cross motion for partial summary judgment. An appropriate order follows.

## ORDER

For the reasons stated in the accompanying Memorandum of even date, the Court finds that the 2001 amendments to Title 29 of the Virgin Islands Code, section 556(c), (d), and (e), apply to this action. Accordingly, it is hereby

**ORDERED** that the plaintiffs' motion for partial summary judgment and/or declaratory relief [docket entry # 27] is **DENIED**, and

**ORDERED** that defendant Virgin Islands Port Authority's cross motion for

*Landgraf v. USI Film Prods.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Here, however, neither the plain language of

partial summary judgment [docket entry # 30] is **GRANTED**.

the provision nor its legislative history suggest that it applies to judgments already entered.